In the Matter of ABRAHAM ARONSTEIN, an Attorney, Respondent.

First Department, July 3, 1936.

*Einar Chrystie*, for the petitioner.

*Wm. Burdell Banister* of counsel [*Joseph Aronstein*, attorney], for the respondent.

MARTIN, P. J.   The respondent was charged with professional misconduct in that on April 3, 1935, he received from a client, one Selma Grubel, the sum of $250, for the purpose of settling an action previously brought against her by the Title Guarantee and Trust Company.   Thereafter the respondent delivered to the attorney for the plaintiff in said action his check for $250 in exchange for a stipulation of discontinuance.   The check was not paid when presented because of insufficient funds to the credit of the respondent's account.   It is charged that the respondent converted to his own use said sum of $250.

The facts upon which the charge is predicated are admitted, but respondent denied the conversion of the money received from his client.   In explanation of the situation, he testified that his client Selma Grubel on April 3, 1935, after banking hours, delivered to him $250 in cash for the purpose of settling the case.   He retained possession of this money until the next day, when he turned it over to one Maurice Bernstein for deposit in respondent's account in the Corn Exchange Bank.   Later in the afternoon of the same day, assuming that the money had been deposited by Bernstein, he drew and delivered his check to the attorney for the plaintiff in return for the stipulation of discontinuance.   It was only upon being notified that the check was returned that he discovered that the $250 had not been deposited.   The respondent further testified that on April 13, 1935, Bernstein called at his office, admitted he had stolen the money, and gave him a check for $200, which was dishonored when presented for payment upon the ground that there was no account in the name of the person who purported to be the drawer of the check, which obviously was in the handwriting of Bernstein, whose name appeared thereon as indorser.

The only issue before the referee was the truth of the above explanation.

It appears that Bernstein was an impecunious individual, a sort of hanger-on in the office of the respondent, and depended upon small loans for his food and lodging.   The respondent had at least two associates who were members or prospective members of the bar and who had previously made deposits for him.   It is highly improbable that the respondent would have intrusted $250 in cash to Bernstein for deposit instead of waiting until one of his associates was available.   Moreover, notwithstanding the testimony of the respondent that he gave duplicate deposit slips to

Bernstein, one of which was to be returned as evidence of the deposit, he did not become suspicious at the failure of Bernstein to return to the office, although Bernstein had been accustomed to visit it almost daily.

At the close of the respondent's case Bernstein was produced as a witness in his behalf, the respondent having located him in the Bronx County Jail, where he had been committed in September, 1935, for violation of his parole. It appears that Bernstein had been arrested in September, 1932, charged with grand larceny. He was convicted, but given a suspended sentence. In February, 1933, he was arrested on the charge of petit larceny. He was convicted on March 9, 1933, and sentence suspended, but was turned over to the Bronx county authorities for violation of his original probation and committed to the penitentiary for an indefinite term. He was paroled on September 7, 1934, and, as noted, again arrested and committed in September, 1935, for violation of his parole.

Bernstein testified that the respondent gave him the $250 for deposit, and that he stole it. The referee has rejected this testimony as unworthy of belief. This conclusion is sustained by discrepancies between the testimony of the respondent and that of Bernstein. The latter testified the respondent gave him his bank book for use in making the deposit; the respondent testified that he gave him duplicate deposit slips; the respondent testified Bernstein gave him a check for $200 in part payment of the amount stolen; Bernstein says that the $200 check was in connection with a loan. In this connection Bernstein admitted the check was spurious. Clearly, therefore, if it was given in repayment of the $250, Bernstein would naturally have drawn it for that amount. Bernstein admitted on cross-examination that the day before his appearance as a witness he had stated to a representative of the petitioner that he had never stolen any money from the respondent. Bernstein further testified that he had talked to no one about the matter other than a representative of the petitioner, saying, " to this day, if I didn't listen in I would not know anything yet what it was all about." The respondent testified that he visited Bernstein at Riker's Island, that he identified him and started to talk to him through a little door, but could not hear, and walked away.

Upon this record it is clear that the testimony of Bernstein is a fabrication. That the respondent knew at the time he gave his check to Mr. Spedick, attorney for the plaintiff, that the $250 was not deposited, is shown by the fact that the check was dated ahead, and also by the testimony of Mr. Spedick that the respondent requested him not to deposit the check immediately in order to allow the check which the respondent stated his client had given him to go through his bank. The respondent denied any such

request. There is no reason, however, why Mr. Spedick, an entirely disinterested witness, should have testified falsely against a brother attorney.

It appears that the respondent on April fifth deposited $150 in his account, which undoubtedly was part of the money received on April third from his client. There were checks then outstanding, other than the one given the plaintiff's attorney, which reduced his balance on that day to $48.08. On April eighth his bank balance was reduced to $10.08, at which it remained until April seventeenth, during which time eleven checks, aggregating $620, including the one in question, for $250, were presented for payment and returned because of insufficient funds.

The respondent has added to his original offense by giving and procuring another person to give false testimony in this proceeding.

The respondent should be disbarred.

McAvoy, O'Malley, Townley and Glennon, JJ., concur.

Respondent disbarred.